**AMY REALTY, A RIGP**

v.

**Sergio S. GOMES, et al.**

**No. 2002–480–APPEAL.**

Supreme Court of Rhode Island.

Jan. 21, 2004.

Patrick T. Conley, Esq., Providence, for Plaintiff.

Peter J. Comerford, Esq., Providence, for Dependant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Declaring a tax sale to be null and void for lack of proper notice to the property owners, the Superior Court dismissed a petition to foreclose a tax lien with prejudice. The plaintiff, tax-sale buyer Amy Realty, a Rhode Island general partnership (Amy Realty) appeals from that order, as well as from a Superior Court order granting the defendant taxpayers and property owners' motion to deposit money into the court registry. Concluding that the tax collector complied with the statutory notification requirements when he caused the appropriate notice to be mailed via certified mail to the taxpayers' last and usual place of abode, we reverse, vacate the dismissal order, and remand this case to the Superior Court for further proceedings consistent with this opinion.

On May 5, 1999, the Narragansett Bay Water Quality District Commission (NBC) conducted a tax sale of property owned by defendants, Sergio and Jamie Gomes (the Gomeses) at 30 Willard Street in Pawtucket (the property). Amy Realty purchased the subject property at a tax sale for nonpayment of sewer fees that were payable to NBC. A year later, on May 8, 2000, Amy Realty filed a petition against the Gomeses seeking to foreclose their right of redemption to the property, pursuant to G.L.1956 § 44–9–25. The Gomeses thereafter filed an answer and a motion challenging the validity of the tax sale. They argued that they did not receive actual notice of the tax sale because the notice, which NBC sent by certified mail, was unclaimed and, in any event, insufficient. The Superior Court held a hearing on Amy Realty's petition to foreclose the Gomeses' right of redemption and on the Gomeses' motion to void the tax sale.

At the conclusion of the hearing, the hearing justice found that NBC had not given proper notice to the Gomeses. He declared the tax sale to be void and dismissed the petition to foreclose, stating:

"I believe that the Narragansett Bay Commission when it proceeded with this sale had not given notice to Mr. Gomes, and they inappropriately proceeded to conduct the tax sale, knowing full well that he was a customer of theirs on three properties, that he could also be located through Japonica Street, that they had a phone number at Willard Street, and that it should have been signaled to them when it came back that the matter had gone unclaimed, that this was a strange situation, indeed, for a man who regularly paid his bills on the other two properties [he owned], and for which they should have known there was still an ongoing dispute with him about

what, if anything, it was that he owed them."

Amy Realty appealed from the order that dismissed its foreclosure petition.

The Gomeses then moved for an order permitting them to pay into the registry of the court an amount equal to what Amy Realty paid to acquire the property at the tax sale. After a brief hearing, the court ordered the Gomeses to pay the sum of $1,617.92, which equaled the amount that Amy Realty paid at the tax sale, into the court registry as a condition of their redemption of the property. Amy Realty also appealed from that order.

A single justice of this Court ordered the parties to show cause why we should not decide these appeals summarily. Because they have not done so, we proceed to resolve the appeals at this time.

On appeal, Amy Realty contests both the order declaring the tax sale to be null and void and the order granting the Gomeses' motion to deposit money into the court registry. Amy Realty states, however, that it is not attempting to preclude the Gomeses from redeeming the property; rather, it argues that it validly acquired the tax title and, therefore, the Gomeses are liable for the payment of all proper redemption costs, including the sum Amy Realty expended at the tax sale—plus interest, penalties, rents, and attorney's fees. Amy Realty asserts that the hearing justice abused his discretion in voiding the 1999 tax sale because the record demonstrated that NBC caused the tax-sale notice to be sent via certified mail to the Gomeses' "last and usual place of abode," which is an acceptable form of notice provided for in § 44–9–10(a). It maintains that a delinquent taxpayer need not re-ceive actual notice of a tax sale, but only notice that is reasonably calculated to apprise the taxpayer of the proceedings. Amy Realty also asserts that "notice by certified mail is both constitutionally and legally sufficient even where the certified mail has not been received by the taxpayer so long as the notice was addressed to the taxpayer's last and usual place of abode."

Amy Realty further contends that, in accordance with G.L.1956 § 44–7–7, the failure of a taxing authority to send a bill or the failure of the taxpayer to receive actual notice does not excuse the nonpayment of the tax or affect the validity of the proceedings to collect such tax. Amy Realty further argues that the Gomeses were not entitled to rely upon any alleged assurances from NBC that it would mail their bills to the Japonica Street address where the Gomeses supposedly instructed the tax bills to be sent. It also maintains that Sergio Gomes was "acutely aware that the NBC could sell his Willard street property for the non-payment of taxes."

The Gomeses argue that although this Court has not directly addressed the effectiveness of an unclaimed certified mailing of the notice for a tax sale, it has suggested "[o]n every near approach to the issue" that such an attempt at notice is ineffective and violative of due process. They contend that a notice that is unclaimed "is truly 'a mere gesture' and is certain not to have informed the affected party."

■ The Gomeses' argument with regard to the asserted insufficiency of this notice is not persuasive. As Amy Realty has noted, foreclosures for failure to pay sewer-user fees track the course of tax sales. When NBC caused this notice to be mailed to the Gomeses, § 44–9–10(a)[1] set

---

1. This part of the statute was later amended in 2002 and it now provides:

"Whether or not the person or general partnership to whom the estate is taxed as of December 31st prior to the tax sale is a

forth the notice requirements for tax sales as follows:

"Whether or not the person to whom the estate is taxed is a resident of this state, *the collector shall,* in addition to the foregoing, *notify the taxpayer of the time and place of sale either by registered or certified mail sent postpaid to the taxpayer's last and usual place of abode* not less than twenty (20) days before the date of sale or any adjournment of the sale, or be left at the taxpayer's last and usual place of abode, or personally served on the taxpayer not less than twenty (20) days before the date of sale or any adjournment of the sale, but no notice of adjournments shall be necessary other than the announcement made at the sale." (Emphases added.)

We have said that "the failure to comply fully with these statutory-notice provisions invalidates the attempted tax sale." *L. Brayton Foundry Building, Inc. v. Santilli,* 676 A.2d 1364, 1365 (R.I.1996) (per curiam) (citing *Williams v. City of Providence,* 641 A.2d 1328 (R.I.1994)).

Section 44–9–10(a) requires that the tax collector either cause the taxpayer to be served personally, or by leaving a notice at the taxpayer's last and usual place of abode, or by mailing the notice to the taxpayer's last and usual place of abode by registered or certified mail. Here, by disregarding the above-emphasized statutory language authorizing service by certified mail to the taxpayer's last and usual place of abode, the hearing justice improperly placed the onus on NBC to do more than what it was statutorily required to do.

The evidence in this case established that at the time NBC sent the notice to the Gomeses at the Willard Street address, Sergio Gomes had indeed been residing there for five years before the tax sale. Therefore, the notice was sent by certified mail to the Gomeses at their last and usual place of abode, and it complied with § 44–9–10. Moreover, NBC also gave notice by publication in this case. Consequently, we hold that the hearing justice erred in finding that the notice to the Gomeses was inadequate. Actual notice was not required; otherwise, taxpayers seeking to avoid payment could dodge the tax collector merely by refusing to pick up their certified or registered mail. The fact that NBC may have known that the Gomeses were customers of NBC on two other properties for which they regularly paid their tax bills, that they also could be found at the Japonica Street address, that NBC could have telephoned them, and that NBC should have known that the Gomeses continued to dispute the amount that they owed to NBC in taxes were all irrelevant to the propriety of the notice they received.

■ Next, Amy Realty argues that the hearing justice erred in allowing the

resident of this state, the collector shall, in addition to the foregoing, notify the taxpayer of the time and place of sale either by registered or certified mail sent postpaid to the street address of the real estate liable for payment of taxes, and, if different, to the taxpayer's address listed with the tax assessor's office of the city or town where the real estate is located or to any other address which the taxpayer designates by written notice to the tax assessor, or to the address of the taxpayer stated on the deed recorded in the land evidence records of the city or town where the real estate is located or to the last known address of the taxpayer not less than twenty (20) days before the date of sale or any adjournment of the sale, or be left at the taxpayer's last known address or personally served on the taxpayer not less than twenty (20) days before the date of sale or any adjournment of the sale, but no notice of adjournments shall be necessary other than the announcement made at the sale." G.L.1956 § 44–9–10(a), as amended by P.L.2002, ch. 245, § 1, effective January 7, 2003.

Gomeses to deposit into the court registry $1,617.92, the amount Amy Realty paid at the tax sale. It maintains that the Superior Court Rules of Civil Procedure, which permit such registry deposits, do not apply to tax foreclosure proceedings. Amy Realty contends that if the tax sale was not void, then the Gomeses are liable for the payment of all redemption costs, including the sum Amy Realty expended at the tax sale—plus interest, penalties, rents, and attorney's fees. To support this assertion, Amy Realty relies on *Allen & Reed v. Investments, Inc.*, 57 R.I. 457, 190 A. 447 (1937). Amy Realty also asserts that, pursuant to the law as stated in *Ashness v. Burr's Lane Associates*, 640 A.2d 522 (R.I. 1994) (per curiam), and in accordance with the provisions of § 44-9-29, it is entitled to rents on the Willard Street property from the thirteenth month following the May 1999 tax sale.

In ordering that the money be placed in the court registry, the hearing justice apparently believed that doing so would ensure that the Gomeses were ready, willing, and able to redeem the property. Although Rule 81(a)(2) of the Superior Court Rules of Civil Procedure provides that the rules do not apply to petitions for foreclosure of redemption rights in land sold for nonpayment of taxes, there is no apparent prohibition against the court utilizing the registry to ensure that equity is done and that the Gomeses would reimburse Amy Realty for the purchase price at the tax sale. That is clearly what the hearing justice intended to accomplish in this case, and we hold that it was not error for him to do so.

With respect to any other costs that Amy Realty may be entitled to collect, § 44-9-29 provides that the person redeeming may, in the court's discretion, be allowed to redeem "upon payment to the petitioner of an amount sufficient to cover the original sum, costs, penalties, and all subsequent taxes, costs, and interest to which the petitioner may be entitled, together with the costs of the proceeding and counsel fee as the court deems reasonable." Because Amy Realty is not contesting the Gomeses' right of redemption and because the hearing justice erred in invalidating the tax sale, we hold that Amy Realty is entitled to seek payment of the original sum, plus costs, penalties, and any subsequent taxes, costs, or interest, "together with the costs of the proceeding and counsel fee as the court deems reasonable," in accordance with § 44-9-29.

■ In addition, Amy Realty also is entitled to seek a recovery for the net rents on the property for the period from the one-year anniversary of the tax sale to the date of the redemption. In *Ashness*, 640 A.2d at 523, this Court noted that pursuant to § 44-9-12, which provides that a tax-title purchaser's rights in land do not accrue until one year after the tax sale, a "purchaser is entitled to collect and keep rents derived from the property until the time that the right of redemption is exercised by the original property owner." We express no opinion, however, on whether Amy Realty is entitled to recover such rents and additional sums in this case because these are all matters that should be addressed on their merits in the first instance by the Superior Court, which we direct it to do on remand.

For these reasons, we reverse in part and affirm in part, as follows: we reverse and vacate the order invalidating the tax sale, affirm the order requiring the Gomeses to deposit the purchase price into the registry of the court, and remand this case to the Superior Court for further proceedings consistent with this opinion to determine what amount the Gomeses must pay to Amy Realty to redeem the property

and avoid foreclosure of their right of redemption.