DECISION
This action, at its root, concerns an untimely paid water assessment for a condominium unit in the amount of $420. As an unfortunate result of the actions of the parties and their attorneys, this minor dispute — which should have been resolved at its inception — has escalated into action by defendant High Ridge Condominium Association to lien the condominium unit in question and then to attempt to foreclose the lien (in an effort to extract attorney's fees and administrative costs which mounted during the period of the parties' dispute) and this suit by plaintiff Carolyn Piccione to enjoin the foreclosure, discharge the lien, declare portions of the Rhode Island Condominium Act unconstitutional and hold the Condominium Association liable for compensatory and punitive damages for slander of title and defamation. In addition, both parties seek exorbitant attorney's fees.
In an effort to end this dispute where it should have ended originally, this Court orders the defendant to discharge the lien in question and enjoins it from foreclosure of that lien. It further enjoins the defendant from engaging in further collection activity in connection with the late payment of the water assessment (including future recordation of any lien for late charges, attorney's fees and other charges or foreclosure of such lien) upon payment by plaintiff to defendant, out of the funds deposited by plaintiff into the Court Registry, of late charges of $45 (together with accumulated interest). Out of the funds on deposit, defendant shall be paid $535.20 *Page 2 
(representing the $420 emergency water assessment and the $115.20 usual condominium fees that plaintiff tendered to defendant in August 2003 by check that defendant apparently never cashed) — to the extent those monies remain unpaid — plus accumulated interest. The balance of any monies remaining in the Court Registry after the payment of these monies to defendant shall be returned to plaintiff. All other claims are denied, including plaintif's claims for compensatory and punitive damages for slander and slander of title, plaintiff's request for declaratory relief and the parties' respective claims for attorney's fees.
 Factual Background
Anthony Piccione died intestate on July 14, 1994, leaving four heirs-at-law: his wife, plaintiff Carolyn Piccione, and his three children, Paula Piccione, Brenda Piccione and Joseph Piccione. At the time of his death, he owned a condominium, Unit #114, in the High Ridge Condominiums in Cranston, Rhode Island. After his death, by virtue of a deed and decree of the Probate Court dated September 29, 1994, title to the condominium vested in his wife and three children.
Joseph Piccione lived in the condominium at the time of his father's death and continued to live there, according to his testimony, until sometime in 1999. Since his father's death, he has handled all business matters pertaining to the condominium even though he is not the sole owner of the unit. After he allegedly moved out, it appears that he continued to pay the mortgage, taxes and usual condominium fees. Indeed, plaintiff testified that her son was responsible for paying the condominium fees and expenses on her behalf. There is no evidence that any of the family members ever notified the Condominium Association of their off-site addresses, although plaintiff testified that the Association must have known her address because her husband had received mail there before his death. *Page 3 
At some point, it appears that Joseph Piccione rented the condominium unit, although the identity of any tenant is unclear. According to Joseph Piccione, the rent covered the mortgage, taxes and insurance but not any special assessments. This alleged rental appears to the Court to have been the source of animosity between these parties. Indeed, the defendant may well have taken action to lien and foreclose upon the lien recorded against the family's condominium unit in the hope of ending their rental and ousting them from the unit.
This litigation arose out of a special emergency water assessment that the Association levied against the unit owners. On December 13, 2002, the Providence Water Authority apparently contacted the Rhode Island Property Advisory Company ("RIPAC"), the property management company for the High Ridge Condominiums, asking that the Condominium Association bring its water system up to code. RIPAC sent a form letter, dated December 13, 2002, to all unit owners at the High Ridge Condominiums to inform them of the Providence Water Authority's request, the $35,000 proposed cost of the project and a proposed assessment of $420 per unit to fund the water system improvements. They enclosed ballots with the letters, asking the unit owners to vote on the proposed emergency assessment. The letter regarding Unit #114 was addressed simply to "Unit Owner" at the address of that condominium. It called for payment of the pro rata assessment for the unit of $420 on or before April 15, 2003. (See Jt. Exhibit 1.) It appears that Joseph Piccione received this letter and informed plaintiff of it.
On May 31, 2003, RIPAC sent Joseph Piccione a letter regarding Unit #114. It stated that his account had a past due balance of $420 as of that date for the water assessment and demanded full payment within five days to avoid legal action. The letter further stated that if RIPAC did not receive full payment by June 13, 2003, it would refer the matter to an attorney for collection, and Mr. Piccione would be liable for those legal fees. It gave no notice of the prospect of a lien being recorded against the property for unpaid expenses. RIPAC sent the letter by certified mail to Joseph *Page 4 
Piccione at an off-site address of 42 Briarbrooke Lane, Cranston, Rhode Island where it appears he resided at the time; the postal service returned the letter as "unclaimed" after multiple attempts at delivery. (See Jt. Exhibit 2.) There is no direct evidence as to whether any of the owners of the condominium unit at issue received this letter, although there is evidence that Joseph Piccione lived at and later received mail at this address.
On June 23, 2003, the $420 assessment pertaining to Unit #114 remained unpaid. Joseph Piccione testified, unconvincingly, that he did not pay it because he did not understand the basis of the assessment. Hearing nothing from him, the Condominium Association voted to refer the matter to its attorney, Timothy Morgan, for collection and to record a lien for the unpaid assessment and related charges against the property.
On that same date, with no due diligence having been conducted in advance to determine the owners of the unit in question and with no notice to them, counsel created a cloud upon title to their property by filing in the Land Evidence Records for the City of Cranston a lien for "unpaid condominium common expenses" dated June 19, 2003 against Unit #114 for $588, plus attorney's fees of $375 and a filing fee of $12 (for a total lien amount of $975). It incorrectly listed the only property owner as Joseph A. Piccione. The lien did not explain what comprised the $588 amount listed as an unpaid condominium common expense nor did it give any explanation of how the attorney's fees were calculated or to what the filing fee pertained. (See Jt. Exhibit 3.)
Indeed, the Condominium Association gave no notice of this lien to any of the owners of Unit #114 for over a month. By letter dated July 28, 2003, Mr. Morgan notified Joseph Piccione at the 42 Briarbrooke Lane address that he had placed a lien on Unit #114 for "unpaid common expenses and/or special assessments." (See Jt. Exhibit 4.) He enclosed a copy of the lien as recorded on June 23, 2003. The letter did not explain the nature or amounts of the claimed unpaid expenses. The letter further instructed that if Mr. Piccione did not make full payment within 20 *Page 5 
days, then Mr. Morgan would institute foreclosure proceedings. Those proceedings, according to the letter, would continue until all payments were paid in full. (See id.) Joseph Piccione received this letter. The defendant sent no similar lien notice, however, to plaintiff or any of the other unit owners, and there is no evidence that they received notice of the lien. Plaintiff testified that, had she received notice of the arrearage or lien, she would have instructed her son to pay the overdue amount, as it was her custom to pay her bills on time.
With knowledge of the lien and under threat of foreclosure, Joseph Piccione paid the High Ridge Condominiums the water assessment of $420 and the usual monthly assessment of $115.20 by two checks dated August 18, 2003. (See Jt. Exhibit 16.) It appears that defendant did not cash those checks. He testified, again unconvincingly, that he delayed payment until he could determine the basis for the assessment. According to defendant, however, additional monies (in some amount) remained due and owing. Joseph Piccione acknowledged at trial that he paid the assessment three months late and owed late charges of $15 per month (for a total of $45), which still remain unpaid at this time.
By letter dated September 9, 2003, Mr. Morgan advised Joseph Piccione, at the 42 Briarbrooke Lane address, that the Condominium Association had received the two payments totaling $535.25 toward a debt of $1,075.00 that he was collecting for the Association, leaving a balance of $539.75. The amounts of the debt and balance due stated in the letter were not itemized or explained nor did they square with the amounts claimed due and owing in the prior lien notice. The letter warned that if Joseph Piccione did not make full payment of the balance within seven days of receipt of the letter, then Mr. Morgan would initiate foreclosure proceedings as to Unit #114. (See Jt. Exhibit 5.) Defendant failed to send similar notice to plaintiff or any of the other unit owners. According to the testimony of Joseph Piccione, he was confused when he received this letter because it contained a statement of enormous fees due and owing, without explanation. He *Page 6 
said he took the letter to the Executive Board, with his cancelled checks, to show that he had made his payments.
On October 27, 2003, by regular and certified mail, return receipt requested, Mr. Morgan sent a letter to Joseph Piccione at the 42 Briarbrooke Lane address, advising Mr. Piccione that his office had been retained to collect outstanding condominium fees and assessments. The letter stated that the outstanding condominium fees and assessments, plus legal fees and late charges, totaled $1,528.79. This amount did not square with the amounts claimed due and owing in the prior lien notice or the demand letter dated September 9, 2003.
The letter further advised that under the Declaration of Condominium of the High Ridge Condominiums ("Declaration") and the Condominium Act, the Condominium Association had a lien on his unit for any condominium fees and assessments levied. The letter attached a breakdown of the claimed unpaid lien amount. It showed that Mr. Piccione had paid the $420 water assessment as well as monthly condominium fees for the months of August, September and October 2003. It listed as due and owing unspecified late fees ($105), administration fees re: lien ($75), attorney's fees re: lien ($478), Cranston filing fees ($12), title search fees ($150), administration fees re: foreclosure ($50) and attorney's fees re: foreclosure ($658.84). It stated that Mr. Morgan would assume the validity of the debt unless Mr. Piccione disputed it in writing within twenty days. It offered to provide verification of the debt if disputed. (See Jt. Exhibit 6.) The defendant sent no similar lien notice to plaintiff or any of the other unit owners, and there is no evidence that they received such notice.
On December 26, 2003, Mr. Morgan sent a letter by regular and certified mail to Joseph Piccione at High Ridge Condominiums, Unit #114, 200 Cannon Street, Cranston, Rhode Island. (See Jt. Exhibit 17). It stated that it would serve as notice that the unit would be sold at auction on February 13, 2004, at 10:00 a.m., after published notice for at least one day per week for two *Page 7 
consecutive weeks commencing January 19, 2004. (See id.) It enclosed a copy of the lien notice that stated that the unit owner, Joseph Piccione, had defaulted in his obligation to pay condominium assessment fees. (See id.) The defendant sent no similar foreclosure notice to plaintiff or any of the other unit owners.
The advertisement placed in The Providence Journal by Mr. Morgan advertised the scheduled foreclosure auction of Unit #114 and again incorrectly listed Joseph Piccione as the only unit owner by deed. (See Jt. Exhibit 8.) Plaintiff testified that she first learned about this threatened foreclosure when she saw this advertisement in the paper. Joseph Piccione said she called him about it. The legal description of the property referenced in the advertisement, however, was not for the condominium unit at issue but was for unrelated property that Joseph Piccione had once owned but sold in 1987. (See Jt. Exhibit 9.)
Joseph Piccione retained counsel to try to assist him in resolving the ever-mounting fee dispute. By letter dated February 9, 2004, Thomas Ricci, counsel to Joseph Piccione, wrote to Mr. Morgan and stated that Joseph Piccione did not believe that he owned the condominium referenced in Mr. Morgan's correspondence. He requested copies of the documents that Mr. Morgan relied upon to give notice. (See Jt. Exhibit 11.)
On February 18, 2004, Mr. Morgan provided Mr. Ricci with a breakdown of the balance due for Unit #114 and payments received from Mr. Piccione. It listed finance charges due of $15 each for late payments of condominium fees dated July 12, 1999, January 12, 2000, January 11, 2001, June 12, 2001, December 12, 2001, February 10, 2003, and September 11, 2003. It also listed unspecified lien fees dated July 9, 2003 of $465, an unspecified charge of $100 dated September 11, 2003, unspecified foreclosure fees of $658.84 dated October 24, 2003, an unspecified charge of $50 dated the same date, unspecified title search fees of $150 dated October 24, 2003, and unspecified advertising fees of $498.48 dated February 5, 2004. He calculated that the total balance due the *Page 8 
Condominium Association as of that date was $2,027.27. (See Jt. Exhibit 11.) This amount was not fully explained nor did it square with the amounts claimed due and owing by defendant in its prior notices to Joseph Piccione.
In a letter dated March 22, 2004, Joseph Piccione wrote that, after hiring an attorney to research the foreclosure proceedings, he realized that the property referenced in the foreclosure advertisement was property, unrelated to the condominium unit, that he had owned several years ago but did not currently own. As a result, Mr. Piccione believed that the unspecified fees that he was being charged by the Condominium Association and its attorney, Mr. Morgan, included amounts for advertising, title search and attorney's fees connected with the improper advertisement and amounted to mistakes chargeable to Mr. Morgan. (See Jt. Exhibit 12.)
On March 23, 2004, Mr. Morgan wrote Mr. Ricci and reiterated his claim that there was a balance due of $2,027.27 and indicated that he had been directed to reinstate the foreclosure process. He suggested that Mr. Piccione pay the outstanding balance to avoid further fees for legal expenses, advertising, auctioneer expenses, and title work. (See Jt. Exhibit 11.)
On May 13, 2004, Mr. Morgan wrote a letter to a title attorney, John Grisham, and indicated that he intended to foreclose on Unit #114 and had filed a lien under the name of Joseph Piccione. He indicated that there might have been a change of ownership over the years due to the death of at least one owner. Mr. Morgan wrote: "to comply with the statutory foreclosure requirements, he had to give notice to all parties with an interest in the property." (See Jt. Exhibit 13.) For purposes of preparing an accurate advertisement, he then asked for the name, address and nature of ownership interest of each interested party, together with the relevant book and page references in the land evidence records reflective of that information. (See id.) This is the first time that Mr. Morgan evidenced knowledge of the fact that Joseph Piccione — the only owner of the condominium *Page 9 
unit at issue to whom Mr. Morgan had given prior notice of the alleged debt, lien and contemplated foreclosure — was not the sole owner of the property.
Mr. Grisham's title report, dated May 18, 2004, listed Carolyn, Joseph, Pamela and Brenda Piccione as joint owners of the subject condominium unit with an address of 42 Briarbrooke Lane, Cranston, Rhode Island. (See Jt. Exhibit 13.) The tax rolls of the City of Cranston confirmed these four individuals as owners of the subject condominium unit and listed their address, for purposes of taxing the condominium unit, as 42 Briarbrooke Lane, Cranston, Rhode Island. (See Jt. Exhibit 19 and Stipulation.) Right above this listing, the tax rolls of the City of Cranston also listed Carolyn Piccione as the owner of property at 87 Woodview Drive, Cranston, Rhode Island — the residence where she lived at that time and had lived for decades. (Id.) Notwithstanding the proximity of that information, Mr. Grisham did not provide Mr. Morgan with this alternative address for Carolyn Piccione in his title report. (See Jt. Exhibit 13.)
In addition to the tax rolls listing Carolyn Piccione as the owner of property at 87 Woodview Drive, Cranston, Rhode Island, the Probate Court of the County of Providence also listed that address as her residence, in Book 1020, Page 0492, noting that she was heir to Anthony Piccione, the previous owner of the condominium at issue. (See Jt. Exhibit 20.) There is no evidence that Mr. Morgan or Mr. Grisham ever searched these records of the Probate Court or attempted to give notice to plaintiff consistent with the notice contained within them.
By letters dated May 24, 2004, Mr. Morgan gave separate certified mail notice to Carolyn, Joseph, Pamela and Brenda Piccione of a foreclosure sale of "Unit #4B" of the High Ridge Condominiums, scheduled for June 28, 2004, for "unpaid condominium fees and assessments." (See Jt. Exhibit 14.) Those letters, while purporting to reference the auction of their condominium unit — Unit #114 — mistakenly referred to another unit in the complex — Unit #4B. (See id.) He addressed the letters to each of those four individuals at 42 Briarbrooke Lane, Cranston, Rhode Island. (See *Page 10 id.) The certified mail receipt for the letter addressed to Carolyn Piccione indicated that Joseph Piccione accepted service of it on May 26, 2004. (See id.) She denied, at trial, ever receiving it. The letter to Joseph Piccione included a revised statement of monies due of $2,372.87 which included the amounts previously claimed plus unspecified advertising expenses of $498.48 and common monthly assessments still due and owing in an unexplained amount of $345.60. (See id.)
Defendant sought to re-advertise the foreclosure auction for June 28, 2004, which prompted plaintiff to file this action. The customer balance detail for Unit #114 dated July 8, 2004 shows a balance due defendant of $3438.00. (See Jt. Exhibit 15.) Defendant acknowledges that a credit is due plaintiff for any monies paid by Joseph Piccione against that amount.
 Procedural History
On June, 21, 2004, prior to the scheduled foreclosure auction, plaintiff Carolyn Piccione filed a four-count complaint against defendant High Ridge Condominium Association. In Count 1, she sought a preliminary injunction to enjoin the defendant from further collection activity or foreclosure proceedings, including the auction scheduled for June 28, 2004. She also sought an order to compel the defendant to produce all records regarding the payment of condominium expenses and other charges and fees. She further sought an order to require the defendant to release any lien for unpaid condominium expenses against her property. In Counts 2 and 3, respectively, she alleged slander of title and defamation based on willful false statements of the defendant regarding monies due and owing from her in connection with the property. Finally, in Count 4, she sought punitive damages.
On June 24, 2004, plaintiff filed a motion for a temporary restraining order to enjoin the scheduled foreclosure auction on the grounds that she had not received notice of the auction, she had not received the requisite thirty day advance notice of collection, she had paid all amounts due in full and the Condominium Association had failed to act on her grievance in a timely manner. A *Page 11 
hearing justice of this Court granted plaintiff's motion for a temporary restraining order and enjoined the foreclosure proceedings upon payment by plaintiff into the Court Registry of $865.38. The Court then assigned the case to trial.
After that trial assignment, plaintiff filed an amended complaint to challenge the constitutionality of portions of the Condominium Act (in addition to asserting her prior common law claims). Plaintiff argued that, if this Court were to determine that defendant could file a lien and foreclose on her property without prior notice and hearing, then such action would constitute a violation of her state and federal constitutional rights to due process. She sought a declaratory judgment in Count 5 of her amended complaint, asking this Court to declare portions of the Act unconstitutional. The parties then proceeded to engage in extensive pre-trial discovery.
Plaintiff next filed an "application for a declaratory judgment" with the Court. She asked the Court to declare §§ 34-36.1-3.02(10-12),34-36.1-3.16, and 34-36.1-3.21 of the Condominium Act unconstitutional as violative of the due process clauses of the Fifth andFourteenth Amendments to the United States Constitution and the due process clause of Art. 1, § 2 of the Rhode Island Constitution. Specifically, plaintiff argued that condominium owners are at the mercy of condominium associations, given that no pre-lien or pre-foreclosure hearing is afforded the property owner to contest the validity of the amount sought by the association for unpaid common expenses, assessments, attorney's fees, and miscellaneous fees, charges and expenses with respect to the property. Plaintiff gave the requisite notice of her constitutional claim to the Department of Attorney General.
Simultaneously, plaintiff filed an application for a preliminary injunction seeking to enjoin the defendant from foreclosing on her condominium unit or engaging in further collection activity or foreclosure proceedings concerning the property. She sought an order requiring the defendant to release any lien for unpaid condominium expenses recorded against the property. *Page 12 
Defendant filed an objection to plaintiff's application for declaratory relief, arguing that condominiums are unique and that the Condominium Act affords protection to an association from financial and physical ruin by providing an enforcement mechanism to deter unit owners from not paying or not paying timely those condominium fees and other charges that are assessed. Defendant contended that the challenged portions of the Condominium Act are not unconstitutional because a condominium association cannot function without the protection afforded by the Act. According to defendant, requiring an evidentiary hearing upon demand, prior to its filing a lien or initiating a foreclosure proceeding, would impose upon condominium associations unwarranted fiscal and administrative burdens.
The parties agreed to a non-jury trial on plaintiff's amended complaint and applications for declaratory and injunctive relief. At trial, the Court received testimony and admitted extensive documents into evidence. The parties stipulated to the fact that the decedent's wife, plaintiff Carolyn Piccione, and their three children are the owners of the condominium unit at issue and that the four owners are listed on the Cranston tax rolls as owners of the subject property, with an address listed, for tax purposes, of 42 Briarbrooke Lane. (See Exhibit 19 and Stipulation).
The Department of Attorney General indicated that it would not intervene to address the constitutional issues raised by plaintiff, except upon invitation of the Court. It alerted the Court, however, to the Rhode Island Superior Court's decision in Foley v. Osborne CourtCondominium, 1999 WL 615736 (R.I.Super. 1999), that held that the provisions of the Condominium Act that empower a private condominium association to assess fines and use foreclosure proceedings to collect those fines constitute an unconstitutional delegation of judicial or police power to the association.
After the trial concluded, defendant filed a motion for judgment as a matter of law, pursuant to Rule 50 of the Rhode Island Superior Court Rules of Civil Procedure. It argued that there was *Page 13 
insufficient evidence to support plaintiff's claims of slander, slander of title, injunctive relief and punitive damages and that its declaratory judgment action likewise should be dismissed as a matter of law.
She also filed what she termed her "Closing Argument." As to Count 1, she reiterated her request for a preliminary injunction, seeking to have the defendant enjoined from foreclosing on her condominium unit. In addition, she asked that the Court release to her the $865.38 that she deposited into the Court Registry at the time the Court issued its temporary restraining order to enjoin the foreclosure. Should this relief be denied, she asked that the Court set terms for redemption, as in a tax lien foreclosure action, by determining the proper amount that plaintiff must pay defendant to secure release of the lien. She denied liability for attorney's fees occasioned by mistakes on the part of the defendant and argued that, in lieu of foreclosure action, defendant should have brought a collection action in District Court.
As to Counts 2 and 3, plaintiff asserted that defendant is liable for slander of title and defamation, respectively, in connection with the foreclosure proceedings because she was not properly notified of the lien and pending foreclosure, she has been asked to pay for the defendant's mistakes when placing the foreclosure notice, and the defendant acted maliciously given the failure to notify. She requested damages as to these counts in the amount of $3,269.42 for diminution in value to her property as well as damage to her personal reputation.
As to Count 4, plaintiff asked the Court to award her punitive damages in the amount of $10,000. She asserted that by filing a lien against her property and attempting to foreclose that lien when there was such a small amount of money at issue constituted extreme and outrageous conduct.
As to Count 5, plaintiff reiterated her request that this Court declare unconstitutional §§ 34-36.1-3.02(10-12), 34-36.1-3.16, and34-36.1-3.21 of the Condominium Act. She argued that the Act failed to provide her with pre-deprivation notice and a hearing (at which she could have alleged *Page 14 
defective notice and contested defendant's claim that additional monies were due and owing) before it filed a lien and moved to foreclose upon her property. In addition, plaintiff responded to the defendant's objection to her request for declaratory relief, likening the defendant to a municipality which must observe due process requirements when a taxpayer defaults.
Defendant responded by filing a post-trial memorandum and supplemental response to plaintiff's application for declaratory relief. Defendant contended that plaintiff's defamation claim should be dismissed because the Condominium Association did not make any statements about plaintiff, and the primary purpose of the lien and foreclosure action was to the protect its members. It asserted that her slander of title claim likewise should be dismissed because plaintiff failed to show malice on the part of the defendant or that she sustained any pecuniary loss as a result of the lien and scheduled foreclosure. In addition, defendant argued that plaintiff's request for punitive damages should be denied because she did not show any willful, wicked, reckless, or malicious acts by defendant that would serve as grounds for such an award. Finally, defendant argued that injunctive relief is not warranted because plaintiff failed to pay the assessments, late fees, attorney's fees and other charges that occurred as a result of her non-timely payment of bills sent to her by defendant after proper notice to her at her last known address.
Defendant also argued against a declaratory judgment ruling on the constitutionality of specific portions of the Condominium Act. It asserted that plaintiff, as owner of a condominium, has a contractual obligation to the Condominium Association to pay lawful fees and assessments and is put on notice regarding the rights of defendant to lien and foreclose upon her property for non-payment of those monies under the rules and regulations pertaining to the property. Also, condominium associations throughout Rhode Island depend on the rights afforded to them in the Condominium Act, and if the Court were to declare portions of the Act unconstitutional, then systemic problems would result. *Page 15 
After trial and a review of the parties' lengthy but convoluted pre-trial and post-trial submissions, this Decision follows. It is rendered with no small measure of frustration at the fact that the parties and their lawyers chose to engage in scorched earth litigation over what began with the late payment of a $420 emergency water assessment. Clearly, a rational attempt by the parties, with the assistance of counsel, to resolve their differences with minimal time and expense to the clients, mindful of the importance of conserving judicial resources, would have been the more prudent course.
 Analysis The Rhode Island Condominium Act
The Rhode Island Condominium Act provides that a condominium may be created only through the recordation of a declaration that conforms with the requirements of section 34-36.1-2.05 of the Act. G.L. § 34-36.1-2.01.[3] Under the Act, a condominium must have a unit owners' association to manage it that consists exclusively of the unit owners.Id. § 34-36.1-3.01. The association has the power, inter alia, to:
 (1) Adopt and amend bylaws and rules and regulations;
 (2). . . collect assessments for common expenses from unit owners;
 . . .
 (11) Impose charges for late payment of assessments. . .;
 (12) Impose reasonable charges for the preparation and recordation of . . . statements of unpaid assessments;
 . . .
 (15) Exercise any other powers conferred by the declaration or bylaws;
 . . .
 (17) Exercise any other powers necessary and proper for the governance and operation of the association.
Id. § 34-36.1-3.02(a)(1), (2), (11), (12), (15), (17). Furthermore, the Declaration for the High Ridge Condominiums states that "all maintenance and replacement of and repair to any part of the common elements shall be made by or at the discretion of the Executive Board and shall be a *Page 16 
common expense." Declaration, Art. 4, § 4.1(b). The Bylaws outline the procedure for assessing emergency common expenses, such as the water bill in this case, as follows:
 Assessments for Common Expenses for emergencies which cannot be paid from the annual assessments for Common Expenses shall be made only after notice of the need therefor to the Unit Owners. After such notice and upon approval in writing by persons entitled to cast more than one-half (1/2) in interest of the votes of the Unit Owners, the assessment shall become effective, and it shall be due thirty (30) days after notice thereof in such manner as the Executive Board may require.
High Ridge Condominium Association, Inc. Bylaws, Art. 4, § 4.6, as amended. The Act, Declaration and Bylaws are silent as to the form of notice required. There is no evidence in the record as to the form of notice required by the Executive Board.
Under the Act, "[t]he association has a lien on a unit for any assessment levied against that unit . . . from the time the assessment . . . becomes due." Id. § 34-36.1-3.16(a). This procedure is confirmed in the Declaration which states that "[i]f a Unit Owner fails to timely pay the Unit Owner's proportionate share of the Common Expenses, the Association shall have a lien upon such unit in accordance with and as provided by the Act." Declaration, Art. 2, § 2.5. The Act further provides that, unless the declaration states otherwise, the lien on the unit includes both the assessment for common expenses due as well as assessments for "attorney's fees, charges, late charges, fines, and interest charged." Id. § 4.1(b). The Act states that:
 Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required but is permitted.
Id. § 34-36.1-3.16(d). Yet, the association is not prohibited from taking action — other than recording a lien and proceeding to foreclose the lien — to recover sums for which the Act creates a lien.Id. § 34-36.1-3.16(f). In addition, "a judgment or decree in any action brought under [§ 34-36.1-3.16] must include costs and reasonable attorney's fees for the prevailing party." Id. § 34-36.1-3.16(g). "The association, upon written request shall furnish to a unit owner . . . a recordable *Page 17 
statement setting forth the amount of unpaid assessments against his or her unit. The statement must be furnished within ten (10) business days after receipt of the request and is binding on [all parties.]"Id. § 34-36.1-3.16(h). The association has an obligation keep sufficiently detailed financial records." Id. § 34-36.1-3.18. "All financial and other records shall be made reasonably available for examination by any unit owner and his or her authorized agent."Id. Under the Act:
 The association may take action for failure of a unit owner to pay any assessment or other charges pursuant to [§ 34-36.1-3.16]. The delinquent unit owner shall be obligated to pay all expenses of the executive board, including reasonable attorney's fees, incurred in the collection of the delinquent assessment or other charges by legal proceedings or otherwise, such attorney's fees and other charges also being a lien on the unit. . .
Id. § 34-36.1-3.16(i). "The association's lien may be foreclosed in accordance with and subject to the provisions of § 34-36.1-3.21."Id.
The Act also empowers the association to foreclose on a condominium lien:
 If a condominium unit owner shall default in the payment of any assessment . . . or any other charge which is a lien on the unit in favor of the association or its assigns, then it shall be lawful for the association or its assigns, through its executive board, to sell the unit of any defaulting unit owner . . . at public auction. . . .
Id. § 34-36.1-3.21(a)(1). Furthermore, under § 8.9 of the Condominium Declaration, "violators [of the Declaration] shall be liable for all court costs and attorney's fees incurred enforcing the rights" of the Condominium Association. With regard to notice of the foreclosure:
 [t]he association must first mail written notice of the time and place of sale to the defaulting unit owner, at his or her last known address, by certified mail, return receipt requested, at least twenty (20) days prior to publishing said notice; second, the association must publish the same at least once each week for two successive weeks in a public newspaper. The time of sale shall be at least fifteen (15) days after the publication of the first notice in a public newspaper. *Page 18 
Id. § 34-36.1-3.21(a)(2). "Upon request the association shall provide to any person or entity having an interest of record in the unit: (1) an itemized statement of the amounts owed the association by the defaulting unit owner, separating common expense assessments referred to in § 34-36.1-3.16(b)(2) from interest, attorney's fees, fines and other charges secured by the lien of the association; and (2) a copy of the most recent periodic budget adopted by the association pursuant to [the Act]." Id. § 34-36.1-3.21(c).
"Every contract or duty governed by [the Act] imposes an obligation of good faith in its performance or enforcement." Id. § 34-36.1-1.11. "The remedies provided by [the Act] shall be liberally administered to the end that the aggrieved party is put in as good position as if the other party had fully performed." Id. § 34-36.1-1.12(a). Any person adversely affected by the failure of a person subject to the Act to comply with its provisions or the provisions of the declaration or bylaws has a claim for appropriate relief. Id. § 34-36.1-4.17. "Punitive damages may be awarded in the case of a willful failure to comply with [the Act]," and "[t]he court, in an appropriate case, may award reasonable attorney's fees." Id.
 Injunctive Relief
The parties here do not dispute that the Condominium Association had the right to assess the unit owners equally for the expenses associated with emergency improvements to the water system in the sum of $420 per unit. Joseph Piccione admittedly failed to pay that assessment, on behalf of himself and plaintiff, in a timely manner even after he received notice of it. At that point, therefore, the Condominium Act gave defendant a lien on the unit, by operation of law, for the amount of the unpaid assessment plus any late fees and reasonable attorney's fees and costs that it necessarily would expend in an effort to collect the assessment. *Page 19 
The problem, however, is that the Association, through counsel, failed to proceed in a reasonable manner thereafter. It failed to research the ownership of the subject unit.[4] As a result, it failed to give notice to plaintiff and the other owners of her unit, other than Joseph Piccione, of the arrearage and its intent to refer the matter for collection if payment were not received forthwith. Based on the testimony of plaintiff, such notice, in all probability, would have resulted in her payment of the emergency assessment at this early juncture, sparing her and the other owners of the unit further assessment of late fees, additional attorney's fees and costs and sparing defendant the headaches of further collection action. It was not reasonable, therefore, for counsel to record a lien against plaintiff's property without first ascertaining her ownership interest in the unit and making demand of her for the past due amounts by certified mail, return receipt requested.
Moreover, even assuming that the Association was not required to take these steps because plaintiff had notice of the emergency assessment and failed to pay or ensure timely payment by her son of that assessment, there is nothing that required it to record a lien or take action to foreclose upon the lien for plaintiff's failure to timely pay the assessment. While such actions are permitted by the Act, they are not mandated. Defendant here has failed to establish that recordation of its lien against plaintiff's property was necessary for it to collect from her the unpaid $420 emergency water assessment. Her testimony suggested, to the contrary, that the simple, cost effective act of giving her notice of a demand for payment, especially if coupled with the threat of recordation of the lien and foreclosure in the event payment were not made, would have resulted in payment. Indeed, as shown by the evidence in this case, notice of the statutory lien plus threat of foreclosure — a threat that could have been communicated cost effectively through defendant's simple act of sending a letter — would have been sufficient to prompt payment of the arrearage. After all, Joseph *Page 20 
Piccione tendered payment for the past due assessment in full upon notice of the lien and threat of foreclosure. It was not reasonable, therefore, for the defendant to incur attorney's fees and costs for recordation of the lien without first attempting to collect the unpaid emergency assessment and any late fees through threat of lien and foreclosure.
Moreover, even if it could be considered reasonable for defendant to have recorded a lien against the unit for unpaid expenses permitted by the Act, it was not reasonable for it to have done so without giving the owners of the unit adequate notice of the lien upon recordation. While such notice is not explicitly required by the Act, a prudent condominium association would have given such notice to avoid potential liability for slander of title and to attempt to resolve any disputed amounts due and owing to it at an early juncture rather than risking escalation of the controversy. To be reasonable, such notice should have itemized with particularity the claimed amounts due and owing to the Association.
Here, the Association inexplicably failed to give notice of the recorded lien to plaintiff or any of the other owners of her unit for over a month after it recorded the lien, even though its recordation created a significant cloud on their title to the property. Even then, when it gave notice only to Joseph Piccione, it failed to provide him with adequate information as to how the Association had calculated the lien amount. The lien amount included "unpaid condominium common expenses" of $588 as against an overdue emergency water assessment of $420, with no explanation of the $168 claimed arrearage in excess of the emergency assessment. It also included attorney's fees of $375 and filing fees of $12 without explaining those amounts or establishing that they were necessary and reasonable to collect the unpaid emergency water assessment. The Association further failed to prove at trial the basis for any lien amount for fees, attorney's fees and costs beyond the emergency water assessment of $420, the regular $115.20 monthly payment for condominium fees, plus *Page 21 
possible late fees, acknowledged by Joseph Piccione, of $45 for the three-month delay in his paying that assessment.
Joseph Piccione thus was entirely within his rights, after being given notice of the recorded lien and threat of foreclosure, to tender only the emergency water assessment and the customary condominium fees. Defendant failed to give him notice that any part of the claimed lien amount included late fees with respect to the untimely paid assessments or the amount of those fees nor did defendant explain or justify the need for or reasonableness of the claimed attorney's fees and filing costs. When he failed to tender any amount beyond the emergency and routine monthly assessments, therefore, the Association should have taken steps to explicate its demand for additional monies before moving to foreclose the lien.
It was not reasonable for the Association to move to foreclose the lien without notice to plaintiff and all of the other unit owners, particularly where one unit owner had tendered the emergency and monthly assessments that appear to have comprised the bulk of the lien and disputed the remaining lesser portion of the lien. In fact, the Act required the Association to give notice of foreclosure at that juncture not only to Joseph Piccione, but also to plaintiff and the other owners of her unit. While defendant eventually gave plaintiff notice of the foreclosure at her "last known address"[5] — *Page 22 
albeit not at the address where she and her husband had resided for years, with knowledge of the Association — it was not reasonable for the defendant to proceed with that foreclosure where it was designed to seek exorbitant fees and costs. The monies it sought to recoup through foreclosure at that juncture appear to have resulted largely from its failure to determine the owners of the unit at the outset, to make early reasonable demand of plaintiff for the costs it incurred in not timely collecting the emergency and monthly assessments, to notify plaintiff of the recorded lien before running up those fees and costs and to justify the necessity and reasonableness of its claimed fees and expenses.
Moreover, separate and apart from these failures, it was not reasonable for the Association to choose to foreclose. While the Act gives a condominium association the right to foreclose a lien after notice, it expressly allows for alternative remedies. Where an association is faced with a legitimate, but relatively minor, fee dispute underlying nonpayment of a lien, the reasonable course — barring successful informal dispute resolution — would be to file a collection action in the Rhode Island District Court. The unreasonable course of action, as engaged in by defendant here, would be to continue to pursue foreclosure after running up legal fees and expenses because of a failure to identify the owners of the property at the outset, afford them proper notice and attempt efficient early resolution of the dispute with them before the escalation of costs.
Accordingly, this Court finds that, under the circumstances of this case, it would be inequitable to allow the lien that defendant recorded against plaintiff's property to stand or to allow the defendant to proceed to foreclose that lien. As shown by the evidence, defendant failed, before recording the lien, to identify plaintiff as an owner of the property and to demand payment from her *Page 23 
of the emergency water assessment and specified fees resulting from the unpaid assessment. It failed to give plaintiff notice of the recorded lien even after its filing. It further failed to itemize the expenses that comprised the lien or to prove that those fees, other than the emergency water assessment that was tendered in full by Joseph Piccione and associated late fees, were reasonable and necessary. It initially moved to foreclose without giving the required advance notice to plaintiff. By the time it gave plaintiff that notice, it sought to collect large additional fees that it either incurred by virtue of its own negligence or failed to prove were reasonable and necessary expenses.
While defendant arguably has a statutory lien on the unit at issue for $45 in late charges occasioned by Joseph Piccione's three month delay in paying the emergency water assessment, the evidence at trial suggests that plaintiff is prepared to pay that lien amount out of the monies on deposit in the Court Registry. In addition, she is prepared to pay out of those funds on deposit the $420 emergency water assessment and the $115.20 monthly condominium fee that her son tendered to defendant previously but which defendant apparently refused to accept at the time, to the extent those monies remain unpaid. This Court thus orders plaintiff to pay any such amounts, plus accumulated interest, to defendant out of the monies she deposited previously into the Court Registry. Upon disbursement to defendant of those monies, this Court orders the lien recorded previously against the property by defendant to be permanently discharged (with the order of discharge to be recorded in the Land Evidence records). This Court further enjoins defendant permanently from recording any lien against the condominium unit at issue or taking action to foreclose any lien for the emergency water assessment or any fees and expenses connected with its late payment that are the subject of this litigation. *Page 24 
 Other Claims
Plaintiff's claims for slander and slander of title are likewise denied, as the actions of recording a lien and advertising a foreclosure auction taken by defendant as to plaintiff, even if misguided, were not taken in violation of the Condominium Act, the Declaration or the Bylaws of the Condominium Association. The lien that the defendant recorded against the property and its initial foreclosure advertisement did not make any false statements as to plaintiff, as they erroneously mentioned only Joseph Piccione as the property owner; defendant premised its second foreclosure advertisement on its legitimate view that monies were still due and owing to the Condominium Association (although this Court ultimately rejected its view of the extent of the debt). In addition, the actions of the defendant were not malicious and caused plaintiff no special damage. See DiBiasio v. Brown Sharpe Manufacturing Co.,525 A.2d 489, 492 (R.I. 1987); Hopkins v. Drowne, 21 R.I. at 20, 23 (1898). Absent evidence that defendant acted maliciously or with evil intent, plaintiff's claim for punitive damages also must be denied.See Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993).
In light of this Court's disposition of plaintiff's complaint for injunctive relief, it need not reach her request for declaratory relief that challenges the constitutionality of provisions of the Condominium Act; that count of her amended complaint is therefore denied and dismissed. The Association is advised, however, to avoid recording liens on unit owners' property and moving to foreclose those liens without giving all owners of the unit in question proper notice and an opportunity to respond with respect to the amounts of such liens. The Association may wish to institute procedures placing the onus on condominium owners to apprise it of their addresses for notice and any change in condominium ownership. The Association is likewise advised to attempt informal methods of dispute resolution and to carefully itemize its claims for assessments, *Page 25 
attorney's fees and expenses to ensure that its demands for these assessments and fees are clear, necessary and reasonable. A genuine dispute over assessments, fees and costs that cannot be resolved informally should be the subject of suit in the Rhode Island District Court prior to recording liens and moving to foreclose.
In addressing the parties' claims for attorney's fees, this Court first notes that the plaintiff is the prevailing party with respect to most of its complaint for injunctive relief; defendant failed to prove its entitlement to lien and foreclose the lien on plaintiff's condominium unit for her failure to timely pay the emergency water assessment. While this Court determined that plaintiff is required to pay defendant a minor additional sum for late fees on that assessment, defendant failed to demonstrate that it was entitled to any additional attorney's fees and costs resulting from plaintiff's failure to timely pay the emergency water assessment. While arguably defendant might have been entitled to some measure of attorney's fees associated with its initial efforts to collect the emergency water assessment, it failed to prove the amount or reasonableness of such fees at trial. Accordingly, defendant's request for attorney's fees in this action must be denied.
While plaintiff prevailed on a portion of her request for injunctive relief — by securing the discharge of the lien and an injunction against foreclosure — she is not blameless in the litigation that has brought the parties to this juncture. She could have ensured that her son timely paid the water assessment and, once untimely paid, could have tendered to defendant, in the form of an offer of judgment or otherwise, additional monies for late fees and any attorney's fees that she thought reasonable. She could have offered to deposit monies into the Registry of the Court in exchange for the permanent discharge of the lien and a permanent injunction against its foreclosure, with the Court asked to determine the appropriate amount of that deposit. Instead, she refused to admit to any further financial responsibility regarding the late payment and filed claims of slander and slander of title, sought punitive damages and broadened her lawsuit unnecessarily to challenge, *Page 26 
through a complex declaratory judgment action, the constitutionality of the Condominium Act. In failing to admit to any responsibility in this action and in making what should have been simple litigation complex, she burdened both parties and the Court with voluminous briefing. Her tactics generated excessive attorney's fees and costs for both parties and drove a further wedge between them. As a result, plaintiff's request for attorney's fees is likewise denied.
Counsel shall confer and submit to the Court forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision. The order submitted should set forth the exact amounts of money to be disbursed to each party from the funds on deposit in the Court Registry, inclusive of interest.
[3] All quotations from and citations to the Rhode Island Condominium Act contained within this Decision are from and relate to the version of the Act in effect during the time period of the events at issue in this litigation.
[4] While the Association could have obviated its need to research ownership of the unit by requiring the unit owners to apprise it of any change in ownership and register any addresses for purposes of notice with the Association, through its bylaws or otherwise, there is no evidence that it imposed such requirements in this case.
[5] The defendant ultimately sent notice to plaintiff of the foreclosure auction by certified mail letter addressed to her at 42 Briarbrooke Lane in Cranston, Rhode Island. Although plaintiff did not reside at that address, and it may have been more prudent for defendant to have sent notice to plaintiff at her true residence address based on records in its possession showing the address for her late husband and the tax roll and Probate Court records reflecting that same residence address, defendant's sending of the certified mail letter to plaintiff at the Briarbrooke Lane address nonetheless could be deemed proper notice to her at her "last known address." After all, that address is listed in the Cranston tax rolls as the address for the subject condominium unit to which notice should be sent for tax purposes.See R.I.G.L § 45-24-53(c)(2) (providing that, for zoning purposes, "notice shall be sent . . . to the last known address of the owners, as shown on the current real estate tax assessment records of the city or town in which the property is located" (emphasis added)); see also Smithv. Warren Zoning Bd. of Review, 2005 WL 1154269 (R.I.Super. 2005) (notice does not require "greater inquiry into deed information or land evidence records" than that provided on the records). In addition, the fact that plaintiff did not claim the certified mail letter would not necessarily defeat this showing of notice, as it was claimed by her son, acting on her behalf, at this last known address of plaintiff.See Amy Realty v. Gomes, 839 A.2d 1232, 1235 (R.I. 2004) (held that actual notice is not required and that tax sale notice sent by certified mail to the taxpayer's last and usual place of abode, even if unclaimed, is sufficient notice under R.I.G.L. § 44-9-10; otherwise, taxpayers seeking to avoid payment could dodge the tax collector merely by refusing to pick up their certified or registered mail). Moreover, defendant also gave plaintiff notice by publication, as required by the Condominium Act. See Gomes, 839 A.2d at 1235. Indeed, plaintiff suffered no prejudice from her failure to receive actual notice by certified mail as she received actual notice of the foreclosure through the advertisement in The Providence Journal and was able to move to enjoin the foreclosure proceeding. See Smith v. Warren Zoning Bd. ofReview, 2005 WL 1154269 (R.I.Super. 2005) (as defendants learned of the zoning hearing and were able to attend it, they were not prejudiced and therefore notice was sufficient); Remington Lumber Company v.Theroux, 1992 WL 813542 (R.I.Super. 1992) (as defendants had actual notice, they were not prejudiced by the absence of notice from plaintiff).